(28 Misc. Rep. 336.)

### In re KESSLER.

(Supreme Court, Special Term, New York County.   July, 1899.)

1. INTOXICATING LIQUORS—RESIDENCE DISTRICT—CONSENT OF PROPERTY OWN-
   ERS.
   Under Laws 1897, c. 312, § 17, subd. 8, providing that a saloon shall not
   be maintained within 200 feet of buildings occupied exclusively as dwell-
   ings, without the written consent of two-thirds of the total number of
   persons owning such buildings, except when the traffic in liquor was law-
   fully carried on in such saloon on the 23d day of March, 1896, and con-
   tinuously thereafter, where the premises used for a saloon on March 23d
   were subsequently burned down, and the rebuilding and the re-establish-
   ment of the saloon was not completed for two months, it is necessary to
   have the written consent of two-thirds of those residing within 200 feet,
   in order to obtain a license for the new saloon.

2. SAME—PERSONS CAPABLE OF APPLYING FOR CANCELLATION OF CERTIFICATE.
   Under Laws 1897, c. 312, § 28, subd. 2, providing that a citizen of the
   state may apply for cancellation of a liquor certificate, an applicant who is
   not a resident of the contiguous district, and has no pecuniary interest, may
   apply for such revocation on the ground that the saloon is situated within
   200 feet of residences, and that the saloonkeeper has not obtained the nec-
   essary written consent of two-thirds of the owners thereof.

Application by Levi L. Kessler to cancel a liquor-tax certificate
issued to Patrick Cashin.   Granted.

Samuel Strasbourger, for petitioner.
C. A. Deshon, for respondent.
Julius Lehmann, for landlord.
Alfred R. Page, for Hillard, special deputy commissioner.

RUSSELL, J.   The petitioner applies for cancellation of the liq-
uor-tax certificate issued to Patrick Cashin on the application made
and license granted the 28th day of April, 1899, upon the ground
that the statement in his application that the traffic in liquor was
lawfully carried on in said premises on the 23d day of March, 1896,
and such premises had been continuously occupied for such traffic
ever since that date, was false in fact, and therefore the commis-
sioner had no authority to issue such tax certificate.   Such state-
ment in Cashin's application was necessary, because the saloon was
located in a residential district.   Laws 1897, c. 312, § 17, subd. 8.
Without the consent of at least two-thirds of the owners, or duly-
authorized agents, of the dwellings within 200 feet, no saloon could
be licensed to carry on the liquor traffic, except where it had been
used as such on the 23d of March, 1896, and continuously thereafter.
The premises (being 850 Sixth avenue, New York City) were used for
the liquor traffic on the 23d day of March, 1896; and on the 22d day
of April, 1898, a new license was given to Katy E. Parks, expiring
May 1, 1899, which license was transferred to Patrick Cashin, the
respondent, April 20, 1899.   On the date of such transfer, and at the
date of obtaining the liquor-tax certificate by Patrick Cashin, on
the 28th of April, 1899, the premises were not used for traffic in
liquor, and had not been so used for two months, nor were they so
used until the 19th of May, 1899.   The cause of the suspension or
cessation of the liquor traffic in this saloon was the destruction of a

portion of the premises by fire in February, so that it was not practicable to use them for such purpose.   The landlord at once repaired the premises, and the respondent put fixtures in the new saloon, so that the suspension was but for a period of three months, and the acts of the parties evidenced the continuous desire and intent to carry on the business for which the premises had been formerly used. Did such cessation of business, temporary as it was, destroy the privilege of the tenant to obtain a liquor-tax certificate without the consent of the surrounding owners of dwellings, or was his right simply suspended from necessity?   The aim of the present liquor-tax law is to forbid traffic in liquor within 200 feet of a church or school house (section 24, subd. 2), and also to free from such traffic residential districts, unless the consents of the owners of dwellings within 200 feet, of at least two-thirds of the total number, shall be obtained, indicating a willingness of the people contiguous to the saloon that such business shall be carried on (section 17, subd. 8). An exception to the last inhibition, however, is made where the business has been continuously carried on since the 23d of March, 1896, for the obvious reason that some protection should be given to vested rights, and that even the business of selling liquor should not be prohibited, to the destruction of the good will and property existing prior to the passage of the liquor-tax law.   People v. Hamilton, 25 App. Div. 428, 49 N. Y. Supp. 605; In re Lyman, 34 App. Div. 390, 54 N. Y. Supp. 294; People v. Lammerts, 18 Misc. Rep. 343, 40 N. Y. Supp. 1107; People v. Murray, 148 N. Y. 172, 42 N. E. 584.   This object is largely destroyed where a cessation of the business, either voluntary or involuntary, occurs.   If voluntary, the occupant thus signifies his intent to engage in some other business, or his belief that the privilege is not of much value to him at the place in question.   If involuntary, as in the case at bar, the termination of license privileges without the consent of dwelling owners may be a portion of the hardship.   The property is destroyed and the good will largely lost, so that the protection of the exception in favor of antecedent and continuous business mainly passes away.   The statute does not designate the location as a privileged one, carrying a franchise to vend liquor perpetually.   It merely aims to prevent loss to property in consequence of the advent of a new statute.   And when that aim has been accomplished, and the conditions become mainly as in other cases, the location of the former saloon falls into the general classification applying to all saloons within residential districts, or within 200 feet of a school house or church.   The landlord and tenant here had to create new property, and virtually a new saloon.   It will not answer in such case to say that a new saloon may be erected on the ruins of the old, and carry with it the easement or franchise of a right to vend liquor in perpetuity.   Nor will it do to say that this special exemption from a general policy is a vendible right, as in the present case, passing from Duffy to Parks and from Parks to Cashin, so that it attaches to the election of Cashin to again lease the premises destroyed by fire upon the landlord's renewing the building for such occupancy, and the tenant putting in the appurtenances for a new saloon.

The objection that Kessler is not a resident of the contiguous district, and has no apparent pecuniary interest, is not well founded. Any citizen of the state may apply for a revocation or cancellation of the certificate. Section 28, subd. 2. Let the prayer of the petition be granted.

Petition granted.