(30 Misc. Rep. 361.)

### In re KLEVESAHL.

(Supreme Court, Special Term, Columbia County. January, 1900.)

INTOXICATING LIQUORS—APPLICATION FOR TAX CERTIFICATE—CONSENT OF OCCUPANTS OF ADJACENT DWELLINGS.

Under Liquor-Tax Laws (Laws 1896, c. 112) § 17, subd. 8, providing that an applicant for a liquor-tax license shall file with his application the consent of two-thirds of the occupants of premises used exclusively for dwelling purposes, and situate within 200 feet of the place where the saloon is to be conducted, to the use of the premises for a saloon, but excepting from the operation thereof premises actually occupied for the sale of intoxicating liquors at the time the act went into effect, one applying for a liquor-tax certificate, authorizing her to sell intoxicating liquors in a storeroom which was used as a saloon when the act went into effect, but which use was discontinued for a time by reason of the prohibition by the electors of the town of the right of any person to sell intoxicating liquors therein, must accompany her application with the consent of two-thirds of the occupants of premises within the prescribed distance, and the fact that the discontinuance of use for saloon purposes was compulsory is immaterial.

Petition by Paul Klevesahl for an order revoking and canceling a liquor-tax certificate issued to Emma Perry. Application granted.

Samuel B. Coffin, for petitioner.
Egbert Palmer, for respondent.

EDWARDS, J. This is an application for an order revoking and canceling a liquor-tax certificate upon the grounds that material statements in the application of the holder of the certificate were false, and that she is not entitled to hold the same. It is alleged in the petition that the respondent's statement in her application for a certificate that there were three buildings occupied exclusively as dwellings, the nearest entrance to which is within 200 feet, measured in a straight line, of the nearest entrance to the premises where the traffic in liquor was intended to be carried on, was false; that there were in fact, at the time of the making of such statement, seven buildings occupied exclusively as dwellings within the prohibited distance; and that the petitioner had procured and filed the consent of but one of the seven owners, one of the two consents which were filed not being the consent of the owner of the dwelling nor of his duly-authorized agent. These allegations, supported by proofs filed, are not denied by the respondent, who has appeared and interposed an answer setting up that traffic in liquor was actually lawfully carried on in the premises described in the application on March 23, 1896, by Frank Leek, and that such traffic was actually lawfully carried on by said Leek until May 1, 1897, under a liquor-tax certificate issued to him by the county treasurer, which expired on said 1st day of May, 1897, when he was compelled to cease the traffic by reason of the vote cast in the town at a town meeting held in March, 1897, at which a majority of the qualified electors had voted against permitting traffic in liquor in the town; that at a town meeting regularly held in said town on November 7, 1897, the several propositions or questions provided for in section 16 of the liquor-tax law were again regularly submitted to the qualified electors of the town, a vote was regularly had upon the same, and a majority of the votes cast, canvassed, and counted at said town meeting were for permitting the traffic in intoxicating liquor in the town; that thereafter, and on or about November 13, 1899, the respondent made her application to the county treasurer for a liquor-tax certificate, and on that day the certificate described in the petition was issued to her. This presents the single question of law, whether the consents of owners of dwellings, required by subdivision 8 of section 17 of the liquor-tax law, are necessary, on an application for a certificate to traffic in liquor under subdivision 1 of section 11, where such traffic was actually lawfully carried on in said premises on March 23, 1896, and there has subsequently been a discontinuance of such traffic during the interval when it was prohibited by the vote of the qualified electors of the town, under section 16 of the said act. Does this compulsory discontinuance of the traffic for a period of time relieve the person, on a new application, from the necessity of procuring and filing the consents of two-thirds of the owners of dwellings within the prohibited district?

The exemption from the necessity of procuring consents of the owners of buildings, given by the statute to persons who were lawfully carrying on the traffic in liquor in the premises when the liquor-tax law went into operation, on March 23, 1896, is simply a

privilege or protection extended to such persons and their successors so long only as the traffic in liquor is continuously carried on in said premises. While it may be doubted whether this privilege is not restricted to those persons who were engaged in the traffic in the premises when the act took effect, it must be regarded as settled that such persons and their successors can claim the benefit of the privilege so long only as the premises are continuously occupied for that purpose. Whether the privilege is personal or whether it attaches to the premises, it is lost by a discontinuance of the business for any definite period, and when so lost the consents required by statute must be procured on a new application. In re Ritchie, 18 Misc. Rep. 341, 40 N. Y. Supp. 1106; People v. Lammerts, 18 Misc. Rep. 343, 40 N. Y. Supp. 1107, affirmed in 14 App. Div. 628, 43 N. Y. Supp. 1161; In re Bridge, 25 Misc. Rep. 213, 55 N. Y. Supp. 54, affirmed in 36 App. Div. 533, 55 N. Y. Supp. 54; People v. Hamilton, 25 App. Div. 428, 49 N. Y. Supp. 605; In re Lyman, 34 App. Div. 390, 54 N. Y. Supp. 294; In re Kessler, 28 Misc. Rep. 336, 59 N. Y. Supp. 888. In all the cases here cited, except the last, the temporary discontinuance of the business was voluntary, but I am of opinion that an involuntary suspension of business by operation of law does not take the case out of the principle. In Re Kessler, supra, the suspension of business was involuntary. In that case there was a partial destruction of the premises by fire, and the sale of liquor therein was necessarily suspended during the three months required to put the premises in proper condition for use. It was there held that such cessation of business, though temporary, was a destruction of the statutory privilege, and, upon a new application for a certificate, the consents of two-thirds of the owners of the dwellings within 200 feet were required.

The privilege extended by the statute to those who were actually and lawfully engaged in the liquor traffic on March 23, 1896, "is clearly an exception to the general policy of the law, and consequently it is one which should receive a strict interpretation." People v. Hamilton, 25 App. Div. 428, 49 N. Y. Supp. 605. In the case at bar the respondent's predecessor in business kept a saloon in the premises on March 23, 1896. On the expiration of his license, on May 1, 1897, he was compelled to suspend the traffic in liquor by reason of the vote of the electors of the town prohibiting the sale therein. It was a discontinuance of business by operation of law. When he procured his tax certificate, which permitted him to keep a saloon on the premises, he took it subject to the statute which gave the right to the electors of the town thereafter to prohibit the sale of intoxicating liquor in the town. This was a risk incident to the business in which he engaged, and which he assumed when he procured his tax certificate. The same law which extended to him the privilege of procuring a tax certificate for the traffic in liquor, without procuring the consents of two-thirds of the owners of the buildings, provided that that privilege might be destroyed by a vote of the majority of the electors of the town in the manner prescribed by the act. The statute which conferred the privilege conferred on the electors the right to destroy the privilege. This

privilege of the respondent's predecessor was destroyed in 1897 by vote of the electors of the town. It was not revived in favor of the respondent more than two years thereafter by the vote of the electors permitting traffic in liquor in the town. There had been a discontinuance of the traffic in the premises for more than two years, and it was the respondent's duty to file with her application the consents required by the statute. The prayer of the petitioner for the revocation and cancellation of the certificate issued to the respondent should be granted.

Application granted.